# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE WALKER, | 1:11-cv-0713 AWI-BAM |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Jackie Walker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

1

1

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for benefits on December 26, 2007, alleging disability beginning September 25, 2007, due to mental impairments. AR 37, 101. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). AR 71-72. ALJ Daniel Heely held a hearing and subsequently issued an order denying benefits on December 3, 2009, finding Plaintiff was not disabled. AR 14-30. This appeal followed.

### Medical Record

The entire medical record was reviewed by the Court. AR 112-255. The medical evidence will be referenced below as necessary to this Court's decision.

### Hearing Testimony

ALJ Heely held a hearing on August 4, 2009. Plaintiff appeared and testified; she was assisted by attorney Gina Fazio. Vocational Expert ("VE") George Meyers also testified. AR 31.

At the time of the hearing, Plaintiff was fifty-four-years old and living in California, with her husband and her 37-year-old son, both of whom worked. AR 40-41. Plaintiff testified that she graduated from high school, completed CNA and EMT programs [Certified Nursing Assistant and Emergency Medical Technician, respectively], and was licensed as a CNA and EMT. AR 35. Plaintiff's most recent past work includes work as a security officer dispatcher. AR 36, 117.

With regard to her previous employment, Plaintiff stated that she was let go from her job as a security dispatch in September 2007 due to leaving early and having problems with other employees. AR 36. Thereafter, she filed an unemployment claim and a state workers' compensation claim. AR 36. Plaintiff stated that her unemployment claim was denied and she had not received a response regarding her workers' compensation claim. AR 36.

At the hearing, Plaintiff testified she suffers primarily from mental health challenges. AR 36. Plaintiff experiences depression, paranoia, and panic attacks. AR 37, 47-48. She is not on any

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1  prescription pain medications, but does take medication for her symptoms.  AR 38.

2  　　　When asked about her general health, Plaintiff stated that she was a smoker and had smoked

3  two packs per day for about fifteen years (AR 38); she stated that at the time of the hearing she was

4  smoking a quarter to half a pack of cigarettes per day.  AR 38.  Plaintiff said that her doctors had

5  asked her to stop smoking, but that she had not been diagnosed with any breathing problems, asthma,

6  or emphysema.  AR 38.  Plaintiff testified that she smoked marijuana about 12 times per day, and

7  that a doctor in Oakland, whose name she could not remember, had prescribed it for her.  AR 39.

8  She said she had been using marijuana for about 5 years.  AR 40.

9  　　　When asked about her typical day, Plaintiff stated that during the day, she does household

10  activities such as making the bed, planning for dinner, doing laundry, vacuuming, and checking the

11  mail.  AR 41.  She reads about 6 hours per day.  AR 41.  Plaintiff also gardens, raising zucchini,

12  eggplant, tomatoes, cucumbers, jalapenos, bell peppers, and green beans.  AR 43.  Plaintiff said that

13  she has a driver's license and drove a truck about 3 times per week.  AR 44-45.

14  　　　Thereafter, the ALJ elicited the testimony of vocational expert George Meyers.  AR 51.  The

15  expert stated that Plaintiff's past work was classified as nurse assistant, dispatcher, and security

16  guard.  AR 51.  The VE was asked to consider several hypothetical questions posed by the ALJ.

17  First, VE Meyers was asked to assume a hypothetical worker of Plaintiff's age, education, and work

18  experience with no exertional limits; but such a person would require numerous unscheduled rest

19  breaks, more frequently and more often than normally allowed.  AR 52.  Further the person could

20  not maintain simple routine task concentration and would need less than occasional contact with the

21  public, coworker, or supervisors.  AR 52.  VE Meyers indicated such an individual could not perform

22  Plaintiff's past relevant work or any other work.  AR 52.

23  　　　In a second hypothetical, VE Meyers was asked to consider the same non-exertional limits

24  but the individual could work at simple routine task jobs with occasional public contact.  VE Meyers

25  indicated such an individual could perform work as a warehouse worker, housekeeper, and hand

26  packer.  AR 53.

27

28  　　　　　　　　　　　　　　　　　　　3

1    Plaintiff's counsel asked the VE to consider jobs a hypothetical person could complete,

2    assuming a person of Plaintiff's age, education level, and work experience, with a fair ability to

3    manage changes in routine work situations; fair ability to understand, remember, and follow very

4    short, simple instructions; fair ability to maintain appropriate levels of concentration, persistence,

5    and pace necessary to perform simple, one to two step repetitive tasks; and, fair to poor ability to

6    tolerate the usual stresses and pressures associated with day-to-day work activities.  AR 54.  The VE

7    testified that, if that hypothetical Plaintiff were unable to maintain attendance due to her limitations,

8    then the jobs identified would be affected.  AR 54.

9    **ALJ's Findings**

10    Using the Social Security Administration's five-step sequential evaluation process, the ALJ

11    determined that Plaintiff did not meet the disability standard.  AR 18-19.  *See 20 C.F.R. § 404.1520*

12    (2011).  At Step 1, the ALJ found that Plaintiff had not worked since the alleged onset date.  AR 19.

13    At Step 2, the ALJ found that Plaintiff had a "severe impairment" of bipolar disorder AR 19.  The

14    ALJ found however that her bipolar disorder did not meet or equal a listing at Step 3.  AR 19-21.

15    Based on his review of the entire record, the ALJ determined that Plaintiff retained the

16    residual functional capacity (RFC) to perform a full range of work at all physical exertional levels,

17    with the limitation to jobs involving simple, routine tasks and only occasional public contact.  AR

18    21.  At Step 4, the ALJ subsequently found that Plaintiff could not perform her past relevant work.

19    AR 25.

20    At Step 5, the ALJ utilized the vocational expert's testimony and found that Plaintiff could

21    perform jobs that existed in significant numbers in the national economy, such as warehouse worker,

22    hand packer, and housekeeper.  AR 25-26.  The ALJ therefore found that Plaintiff was not disabled

23    under the Social Security Act.  AR 26.

24    **SCOPE OF REVIEW**

25    Congress has provided a limited scope of judicial review of the Commissioner's decision to

26    deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

27

28                                              4

1  Court must determine whether the decision of the Commissioner is supported by substantial

2  evidence.   42 U.S.C. § 405 (g).   Substantial evidence means "more than a mere scintilla,"

3  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

4  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable

5  mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record

6  as a whole must be considered, weighing both the evidence that supports and the evidence that

7  detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).

8  In weighing the evidence and making findings, the Commissioner must apply the proper legal

9  standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold

10  the Commissioner's determination that the claimant is not disabled if the Secretary applied the

11  proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

12  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

13                                          <u>**REVIEW**</u>

14           In order to qualify for benefits, a claimant must establish that she is unable to engage in

15  substantial gainful activity due to a medically determinable physical or mental impairment which has

16  lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.

17  § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such

18  severity that she is not only unable to do her previous work, but cannot, considering her age,

19  education, and work experience, engage in any other kind of substantial gainful work which exists

20  in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

21  burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

22  1990).

23           Here, Plaintiff argues that the ALJ erred by (1) failing to weigh properly the medical

24  evidence; (2) improperly rejecting her treating physicians opinion; and (3) improperly evaluating her

25  credibility.

26

27

28                                             5

1

### DISCUSSION[2]

2

A.    ***Medical Opinion Evidence***

3

First, Plaintiff argues that the ALJ improperly evaluated the medical evidence in the record.

4

(Doc. 17 at 5-7).  Specifically, Plaintiff argues the ALJ erred by failing to fully adopt the opinion of

5

state agency examining physician Dr. Riffle.  Defendant responds that the ALJ's consideration of

6

Dr. Riffle's opinion was proper.

7

With respect to Dr. Riffle's opinion, ALJ Heely found as follows:

8

In April of 2008, the claimant was evaluated by Dr. Aimee Riffle, Ph.D., a State
agency psychiatric consultant. Dr. Riffle's report notes an unremarkable mental status

9

examination. She endorsed the bipolar diagnosis and opined that the claimant's
symptoms were moderate and that given the treatment resources and support system

10

the claimant had access to her prognosis was fair.  Additionally, Dr. Riffle assigned
the claimant a GAF score of 60, which is consistent with moderate difficulty with

11

social or occupational functioning.
...

12

The claimant's mental limitations were evaluated by Dr. Riffle, the State agency

13

psychiatric consultant who examined the claimant in April of 2008, and Dr.
Evangeline Murillo, M.D., a State agency psychiatric consultant who completed a

14

Mental Residual Functional Capacity form for the claimant after reviewing her
medical records on May 29, 2008.

15

Dr. Riffle wrote in her examination report that the claimant has a fair ability to

16

understand, to remember, and follow very short and simple instructions; maintain the
appropriate level of concentration, pace and persistence to perform simple repetitive

17

tasks; and manage changes in a routine work situation.  **Her ability to tolerate
stresses and pressures associated with day-to-day work was rated fair-to-poor**

18

and her ability to interact appropriately with others was rated good.  Dr. Riffle also
opined that the claimant is able to manage her own funds.

19

In her assessment, Dr. Murillo opined that the claimant was moderately impaired in

20

her ability to process detailed instructions, but not significantly impaired in any other
way.  She opined the claimant could perform simple, routine tasks.

21

The opinions of [the] State agency psychiatric consultants are consistent with each

22

other, well supported, and consistent with the record as a whole. For this reason, they
are given significant probative weight.

23

AR 22-23.  (Emphasis added).

24

25

[2]       The parties are advised that this Court has carefully reviewed and considered all of the briefs, including

26

arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument
or brief is not to be construed that the Court did not consider the argument or brief.

27

28

At the hearing, Plaintiff's attorney questioned the VE as to whether the limitations assessed by Dr. Riffle would affect Plaintiff's ability to work in the jobs identified by the ALJ.  The VE responded as follows:

> It's really tough for me to say. The only thing that would have an effect would be the ability to deal with the day-to-day activities from fair to poor. If she's not able to maintain attendance at the job due to that, then it would definitely affect the jobs. The other ones would not affect what I provided.

AR 54.

Plaintiff argues that the hypothetical relied on by the ALJ failed to incorporate Dr. Riffle's limitation that Plaintiff's "ability to tolerate stresses and pressures associated with day-to day work was rated fair to poor." (Doc. 17 at 5).

Generally, hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

In this case, the ALJ found that Plaintiff had mild restrictions with respect to activities of daily living; moderate difficulties with social functioning; and moderate difficulties in regards to concentration, persistence, or pace.  AR  23.  The ALJ's RFC assessment posed to the VE reflected all of claimant's supported limitations.  In the second hypothetical, the ALJ asked the VE to consider a person of the same age, education, and work history as Plaintiff.  The ALJ asked the VE to assume that this worker had no exertional limitations, but the individual could only perform work at simple, routine task jobs with occasional public contact.  The VE testified: that person could perform work in the national economy.  AR 52.

Contrary to Plaintiff's assertion, Plaintiff's inability to tolerate work stress is adequately addressed in the ALJ's RFC finding that Plaintiff has "moderate limitations in concentration, persistence or pace" and the corresponding limitation to "simple, routine tasks, with limited public contact."  AR 21.  In *Smith v. Halter*, the Court found that an ALJ's hypothetical question that

incorporated limitations related to concentration, persistence, or pace, adequately addressed restrictions related to complexity, and stress. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Moreover, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that a hypothetical question concerning a medical expert's opinion of a claimant's limitation to simple, routine, or repetitive tasks sufficiently captures even a moderate limitation of concentration, persistence, or pace noted by the expert); *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence, or pace and pronounced claimant as possessing the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration, persistence, or pace).

Finally, even assuming *arguendo*, that the ALJ's failure to include Plaintiff's moderate limitation in Plaintiff's "ability to tolerate stresses and pressures associated with day-to day work" was error, such error was harmless. The Ninth Circuit has held that moderate mental limitations do not require vocational expert testimony. *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007). In *Hoopai*, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* After the ALJ utilized the grids at step five to determine that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed. *Id.* at 1075. The Ninth Circuit rejected this argument, holding

that these moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the grids without the assistance of a vocational expert. *Id.* at 1077. Thus, under *Hoppai*, the ALJ could decline to question the VE with respect to Plaintiff's moderate mental limitation associated with her fair to poor ability to complete a workday or workweek due to stress.

Here, the ALJ went beyond the requirements in *Hoopai* by requesting testimony from the VE. The ALJ's RFC assessment found that Plaintiff had moderate limitations in "concentration, persistence, or pace." The ALJ then translated Plaintiff's conditions to restrictions to "work at jobs involving simple, routine tasks with occasional public contact." AR 21. When questioned with the actual residual functional capacity assessment, the VE opined that Plaintiff could perform a significant number of jobs in the national economy. Therefore, even assuming *arguendo* that ALJ Heely erred in failing to rely on Plaintiff's counsel's question to the VE specifically detailing Plaintiff's ability to tolerate stress, the restrictions included in the ALJ's hypothetical question incorporated Plaintiff's mental limitations to the VE. Therefore, any error was inconsequential to the ALJ's ultimate non-disability determination, and was, therefore, harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

B.     ***Physician Opinion Evidence and Plaintiff's Psychological Impairments***

Plaintiff next argues that the ALJ improperly rejected the opinion of her treating physician Dr. Parayno. Maximo Parayno, M.D., treated Plaintiff from December 2007 through July 2009. AR 203-06, 209-14, 223-24, 252-255. Dr. Parayno opined that Plaintiff suffered from bipolar disorder with psychotic features. According to Dr. Parayno, Plaintiff could not handle the stress and pressure of full time work due primarily to impulsive behavior. AR 255. The ALJ rejected Dr. Parayno's opinion on the grounds that it was not supported by his treatment records and was inconsistent with his successful treatment of Plaintiff. AR 24. Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Parayno's opinion. The Court disagrees.

Cases in this Circuit distinguish among the opinions of three types of physicians: 1) those who treat the claimant (treating physicians); 2) those who examine but do not treat the claimant

1   (examining physicians); and 3) those who neither examine nor treat the claimant (nonexamining

2   physicians).  As a general rule, more weight should be given to the opinion of a treating source than

3   to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th

4   Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may

5   be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th

6   Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the

7   Commissioner may not reject this opinion without providing "specific and legitimate reasons"

8   supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502

9   (9th Cir. 1983).  This can be done by setting out a detailed and thorough summary of the facts and

10  conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v.*

11  *Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He

12  must set forth his own interpretations and explain why they, rather than the doctors', are correct.

13  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion

14  must be given controlling weight if it is well-supported and not inconsistent with the other

15  substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

16      Here, the ALJ gave reduced weight to Dr. Parayno's opinion that Plaintiff was unable  to

17  handle full time work because: (1) Dr. Parayno's opinion was inconsistent with his own treatment

18  notes; (2) Plaintiff's symptoms were successfully medicated by Dr. Parayno; and (3) Dr. Parayno's

19  opinion did not address Plaintiff's improved symptoms but instead relied on outdated evidence and

20  treatment notes.

21      The ALJ summarized Dr. Parayno's medical opinion as follows:

22      The claimant's psychiatrist, Dr. Maximo Parayno, Jr., M.D., submitted a Complete
23      Medical Report (Mental) questionnaire dated July 24, 2009. In it, he wrote that the
        last time he treated the claimant was in July of 2009, however no corresponding
24      treatment notes appear in the record. In the checkbox portion of the form, Dr.
        Parayno indicated that the claimant had a poor ability to make occupational,
25      performance, and social adjustments. He rated her ability to understand, remember,
        and carry out detailed instructions as markedly impaired. He attributed these
26      deficiencies to poor judgment, memory, and concentration and an impulsive irritable
        mood. He noted that she stopped taking her medication for a few weeks only to
27      resume when she realized she was getting out of control as an example of her poor

28                                               10

judgment. He further indicated that the claimant cannot handle the stress of and pressure of a full day's work and is not competent to handle her own funds due to her impulsive behavior. He nevertheless indicated that she may be able to understand, remember, and carry out simple one or two step instructions.

Normally treating physicians' opinions are granted more probative weight than those of physicians who have only examined, but not treated, a claimant. However in this case, the undersigned gives significant weight to the other opinions and reduced weight to Dr. Parayno's opinion. Dr. Parayno's treatment notes routinely state that the claimant is doing well on medication and appears stable. They reflect, even early in the treatment process, that the claimant's symptoms are being managed. However, his assessment, which was made two years into treatment, describes a much more limited individual. In fact, it appears to describe the claimant when she is decompensating-such as when she stops taking her medication-and [does] not present an accurate description of her current limitations. He refers to events that predate the opinion, such as the claimant's being fired from her last job two years earlier or prior spending binges to support the conclusion that she cannot work now. For these reasons, the undersigned finds Dr. Parayno's opinion inconsistent and unpersuasive.

AR 24.

Here, the ALJ gave several specific and legitimate reasons for rejecting Dr. Parayno's opinion. First, the ALJ noted that the medical opinion was at odds with Dr. Parayno's own treatment notes, in which he observed that Plaintiff was doing well on medication and appeared stable. AR 24. This is a specific and legitimate reason for giving reduced weight to the opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding treating physician's opinion properly rejected, where such opinion was inconsistent with the physician's medical records).

Second, the ALJ noted that Dr. Parayno's treatment notes reflected that, even early on in treatment, Plaintiff's symptoms were being managed, but that the assessment made two years later described a much more limited individual. AR 24. The ALJ correctly pointed out the inconsistency between the treatment notes showing Plaintiff's early response to treatment and the later description of an individual with many more limitations. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (holding ALJ properly rejected treating physician's retrospective conclusion that claimant was disabled because it contradicted physician's earlier contemporaneous findings).

The ALJ also observed that Dr. Parayno's opinion appeared to describe Plaintiff at a moment of crisis (*i.e.*, when she was decompensating), rather than her current abilities and functioning. AR 24. In light of the treatment notes showing she was doing well on medication and appeared stable,

the ALJ logically inferred that the greater limitations assessed by Dr. Parayno seemed to describe an episode of decompensation. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (ALJ is entitled to draw logical inferences from the evidence). The ALJ could rationally conclude that Dr. Parayno's contemporaneous reports of successful progress and stability reasonably suggest an ability to perform more extensive activity than Dr. Parayno concluded in his opinion.

The ALJ also stated that Dr. Parayno's opinion was not synchronous, in that Dr. Parayno relied on events from the distant past to support the idea that she could not work at the time of the opinion. AR 24. The ALJ properly considered the ambiguity of the opinion, including its reliance on events well in the past, as one factor undermining the value of the opinion. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995) (the ALJ is responsible for resolving ambiguities in the evidence).

Finally, Dr. Parayno's opinion was inconsistent with the other physicians' opinions and with the medical record. The ALJ thoroughly described the opinion of Dr. Parayno and the other doctors' opinions and concluded that Dr. Parayno's opinion was an outlier among both and non-examining and examining physicians. No credited opinion assessed limitations as extreme as those assessed by Dr. Parayno (*i.e.*, finding that Plaintiff could not perform full time work due to stress). AR 255. The most that any physician found was mild to moderate mental limitations, and no other physician stated that Plaintiff could not work. In fact, every other physician concluded that Plaintiff retained an ability to perform at least some work despite her symptoms related to stress. AR 275, 300-303. The ALJ noted the consistent nature of the examining and non-examining physicians opinions, as well as their conflict with Dr. Parayno's opinion. The ALJ legitimately concluded that Dr. Parayno's outlier status entitled that opinion to "reduced weight." AR 24.

Here, the ALJ did not fully credit Dr. Parayno's medical opinion because it was not supported by medical findings and it was inconsistent the medical record. These were appropriate reasons and the ALJ was entitled to resolve the conflict between Dr. Parayno's opinion and those of every other doctor in favor of the conclusion supported by the bulk of the objective evidence. Accordingly, the

1  Court finds no error in the ALJ's decision in weighing the medical opinion testimony.

2  C.      ***Plaintiff's Credibility***

3      Lastly, Plaintiff contends that the ALJ failed to provide sufficient reasons for partially

4  discrediting her testimony.  The Court disagrees.

5      An ALJ must make specific findings and state clear and convincing reasons to reject a

6  claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record.

7  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec.*

8  *Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

9      Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably

10  be expected to cause the alleged symptoms; however, the claimant's statements concerning the

11  intensity, persistence, pace and limiting effects of those symptoms are not credible to the extent they

12  are inconsistent with the [] residual functional capacity assessment."  AR 22.

13      The ALJ went on to discuss Plaintiff's credibility as follows:

14      With regard to the claimant's mental impairment, the treatment records in evidence
     cover a time span of less than one year: from August of 2007 to May of 2008. The
15      claimant reports being under the care of a physician through the present time,
     however, more current records have not been provided. The records that were
16      available for review show that the claimant responded well to medication and
     appeared stable. They do not evince a level of impairment that would completely bar
17      substantial gainful activity.

18      Moreover, the claimant admits to a fairly diverse range of daily activities including
     gardening and housekeeping and is able to function independently outside her home.
19      While she testified that she experiences panic attacks whenever she has to leave her
     house, the undersigned notes that these attacks do not prevent her from leaving the
20      house altogether and that she did not complain of panic attacks to her psychiatrist.
     Her testimony was somewhat contradictory in that while she reported extreme
21      difficulty in getting out of bed or motivating herself to act, she also reported not
     being able to read for more than 20 minutes at a time because she will lose interest
22      all of a sudden and have to "get up and do something." She also testified that she
     continues to have auditory hallucinations, although as of January 2008, her
23      psychiatrist's notes reflect that she is no longer hearing voices. These discrepancies
     tend to undermine the credibility of the claimant's allegations as to the severity and
24      limiting effects of her impairment.

25  AR 23.

26      As seen above, the ALJ found that Plaintiff gave inconsistent statements regarding her

27

28                                      13

treatment, limitations, and activities. AR 23. This discussion is sufficiently specific to ensure that he did not "arbitrarily discredit" Plaintiff's testimony. *See Thomas*, 278 F.3d at 958. First, the ALJ cited to the medical treatment records. AR 23. The ALJ emphasized that the treatment records covered a short time span of less than a year. AR 23. As the ALJ found, the brevity of her treatment tends to undermine Plaintiff's allegations of extreme and debilitating symptoms. *See Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir. 1991*)* (in evaluating credibility, the ALJ should first consider objective medical evidence and then consider other factors); *Fair v. Bowen, Secretary of HHS*, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ may consider lack of extensive medical treatment when assessing claimant's credibility); *see also* 20 C.F.R. § 404.1529(a) (in credibility analysis, ALJ will consider medical evidence). The ALJ also pointed out that additional records had not been provided by Plaintiff or her attorney. AR 23. *See* 20 C.F.R. § 404.1512(a), (c) (claimant bears burden of providing medical evidence of impairment(s) and of severity during the time of alleged disability); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (the mere existence of an impairment is insufficient proof of a disability).

Second, the ALJ explained that the treatment records in evidence showed that Plaintiff had responded well to medication and appeared stable. AR 23. According to the ALJ, this evidence did "not evince a level of impairment that would completely bar [Plaintiff from] substantial gainful activity." AR 23. This, too, is a proper consideration in the credibility analysis. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits"); *Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1999) (ALJ may consider efficacy of treatment when assessing claimant's credibility).

Third, the ALJ referred to Plaintiff's "fairly diverse range of daily activities." AR 23. According to the ALJ:

> The claimant lives at home with her husband and adult son, who both work outside the home during the day. They help claimant by leaving her a check list of tasks to complete on a daily basis. These tasks include things like making the bed, planning for dinner, doing the wash, vacuuming, and checking the mail. She is able to

1  complete routine tasks like making coffee and reheating food in the microwave. She
   retains a driver's license and runs errands in her truck approximately three times per
2  week. In addition, with her husbands help, the claimant tends to her vegetable garden
   for about an hour a day. For entertainment she reads for up to six hours a day.
3  AR 21-22.

4  The ALJ found that Plaintiff's daily activities consist of tasks such as gardening,

5  housekeeping, and functioning independently outside the home. The ALJ is mandated by regulation

6  to consider such daily activities by a claimant. *See* 20 C.F.R. § 404.1529(c)(3)(i) (in weighing

7  severity of symptoms, ALJ will consider the claimant's daily activities, among other factors). The

8  ALJ here properly found that Plaintiff's wide range of activities weighed against fully crediting her

9  allegations. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005) (claimant's

10 activities of caring for her own personal needs, cooking, cleaning, shopping, and interacting with

11 family "suggest that she is quite functional").

12 Given the considerations made by the ALJ, the ALJ properly made "a credibility

13 determination with findings sufficiently specific to permit the court to conclude the ALJ did not

14 arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958. Consequently, the adverse

15 credibility determination was proper.

16 **RECOMMENDATION**

17 Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

18 evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court

19 **RECOMMENDS** that Plaintiff's appeal from the administrative decision of the Commissioner of

20 Social Security be **DENIED** and that **JUDGMENT** be entered for Defendant Michael J. Astrue and

21 against Plaintiff Jackie Walker.

22 These findings and recommendations will be submitted to the District Judge pursuant to the

23 provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after

24 being served with these findings and recommendations, the parties may file written objections with

25 the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

26 Recommendations." The parties are advised that failure to file objections within the specified time

27

28                                            15

1    may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

2    1991).

3

4        IT IS SO ORDERED.

5    **Dated:**   __July 12, 2012__                    _____/s/ **Barbara A. McAuliffe**_____
                                                        UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                              16